UNITED STATES BANKRUTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: Debtors, Richard Peter Caro and | ) | Case No. 13-38958 |
| Svetlana Caro, | ) | Hon. Janet S. Baer |
| | ) | |
| Plaintiffs, | ) | Adversary Proc. No. 13-01334 |
| | ) | |
| Dennis F. Martinek and | ) | |
| Robert L. Hebel, Jr. | ) | |

### DEFENDANTS' PRE-TRIAL STATEMENT

Defendants', Dennis F. Martinek, (hereinafter, "Martinek") and Robert L. Hebel, (hereinafter, "Hebel"), Jr.'s, by their attorney Jordan T. Hoffman state as their Pre-Trial Statement as follows; **THAT**:

**I. DEFENDANTS' THEORY OF DEFENSE:**

1.      Defendants entered into an oral contract to pay Richard P. Caro for legal representation in a RICO matter filed by him on their behalf in which they respectively agreed to pay him as follows: a) Dennis Martinek would give Caro a rent credit for $1,000.00 per month in consideration of services provided; b) Hebel would pay Caro $2,000.00 per month in consideration of services provided; c) Caro would receive a "Success Fee" of 1/3 of the recovery from the RICO litigation.  After the RICO action was filed in the District Court, Caro began to send "statements for Legal Services" to Hebel and Martinek.  Martinek and Hebel both confronted Caro regarding these statements as the parties had never agreed that Caro was entitled to any payment for his billable hours.  Caro reassured Martinek and Hebel that he was simply keeping track of his time presumably in accordance with the "Success Fee" component of the parties' oral agreement. In February, 2012 Caro requested that Defendants obtain new counsel, as he was in the process of obtaining work as a school principal and no longer wised to prosecute the Diaz RICO matter.  Caro's own "Statements for Legal Services" showed that he work nearly ceased completely at this time; the Diaz matter was dismissed. As Caro had stopped performing work under the oral agreement the parties, respectively performing under the arrangement, viz:  Hebel stopped paying Caro $2,000.00 per month cash and Martinek began demanding his monthly rent payments.

2.      Neither Martinek nor Hebel signed any of the numerous documents that Caro proposed in relation to fees including agreements and promissory notes nor did they send any confirming email of assent as was frequently suggested by Caro.

3.      Caro and his wife, Svetlana, their two (2) children and, their two family pets became Martinek's tenants on July 1, 2005 and continue to be tenants in one of Martinek's rental properties located at 111 Groveland Avenue, First Floor, Riverside, Illinois 60546. During the relevant period of time herein, Caro and his family have received a housing subsidy from Martinek to the tune of $41,860.00. Caro had a discussion on or about, September, 2010 with Martinek in which he learned that Martinek had a number of legal problems. Caro informed Martinek that he was an attorney licensed to practice law in the state of New York and that he was a well able to handle matters in federal court despite not having a license to practice law in Illinois.  Caro suggested that he could help out with these problems knowing

that he was unemployed; did not have a stable income and that it presented a potentially great income opportunity and a way to barter his services as a lawyer in exchange for his housing costs. In casual discussions with Martinek, Caro learned that Martinek had a potential RICO claim. Caro suggested that Martinek provide him with documents, statements, access to financial and other information and even requested a Power of Attorney to perform an investigation related to the claim. Caro also involved himself in Martinek's state tax issues with the Illinois Department of Revenue related to the restaurant business in which he obtained information that he considered vital to the prosecution of the RICO claim.

4. The potential for treble damages and attorney's fees and a possible recovery of over one million dollars motivated Caro to pursue the RICO matter vigorously as a means of establishing long-term security for him and his family. Along the way, Caro forgot that a lawyer's job is to represent his client's interests not only to the best of his knowledge, skill and ability but that he also owes his client a duty of loyalty and is charged to safeguard their secrets and confidences. Caro has exhibited a pattern of reckless disregard for this duty of loyalty and betraying his client's secrets and confidences by exposing their private information at every opportunity in an attempt to exploit it for his own gain. In pursuing these matters, Caro has consistently put his interest above those of his former clients. Instead Caro zealously pursued his own financial agenda, successfully by going over two and half years without having to make housing payments while playing the role of the victim and attempting to fund his Chapter 13 Plan claiming an escrow fund comprised of "pre-paid rents" and the right to a judgment on attorney fees which he hopes to characterize as a regular income stream for the purposes of establishing a "feasible plan" for confirmation of he and his wife's Chapter 13 Bankruptcy plan.

5. There is some question as to Caro's status as an attorney at all relevant times during the claimed transactions herein as he told the Department Disciplinary Committee for the First Judicial Department ("DDC"), a New York attorney disciplinary board that he was voluntarily retired from the practice of law as of July, 2010. Caro was given a six months suspension by that body, effective 30 days from the decision of May 31, 2012 based upon statements given by him to a United States Bankruptcy Court which the DDC found by a Special Referee to be "confused, disingenuous or downright dishonest, and plainly incredible." In the bankruptcy proceedings, the court found that respondent "acknowledged that he had no contemporaneous time records to support [his claim for attorney's fees and disbursements], that he permitted other time records to be left out in the rain and rendered illegible and that he destroyed any remaining time records...during the pendency of litigation." **(See Defendants' Exhibit 1**).

6. It was during the period when the disciplinary matter was pending that Caro was pushing Martinek and Hebel to sign a promissory note for attorney's fees.

7. Caro was never licensed to practice law in Illinois while maintaining an office in New York, according to statements made in the disciplinary proceedings. **(See Defendant's Exhibit 1).**

8. Caro states that he practiced in the matters relevant to these proceedings in which he has alleged that he represented Martinek and Hebel and the corporate entity and its various offshoots, predecessors and/or successors on a "Pro Hac Vice" basis. While he may have worked with or in conjunction with several law firms and counsel, it is unclear from the record whether he was actually sponsored and whether local procedural requisites were adhered to such as filing and presenting a motion to be admitted for the limited purpose of representing Martinek in the several matters in which Caro claims

Case No.'s 13-38958 & 13-01334                                                                                                              2

to have represented him in Circuit Court of Cook County as well as Martinek and Hebel in the Eastern Division of the Northern District of Illinois.

9.      Fees paid by Hebel and Martinek to Caro in an amount in excess of $36,000.00 represent an overreach by Caro where the RICO claim was dismissed with prejudice.

10.     Despite Caro having plead a 68 page complaint in which he did not establish the existence of an "enterprise" nor a "pattern of racketeering activity" and even-though Caro submitted ten pages of history, he failed to describe any criminal conduct that took place attributable to that period as being "predicate acts" for the purpose of RICO charges. Judge Gottschalk noted in rendering her decision that this was despite Caro having had the opportunity to do so. **(See Defendants' Exhibit 2).**

11.     Even if Caro had alleged predicate RICO acts, he did not sufficiently plead a relationship between those earlier acts and the later acts by the alleged perpetrators.  **(See Defendant's Exhibit 2).**

12.     The RICO case was subject to the particularized pleading requirements of rule 9(b) and must describe deminimus predicate acts [of fraud] with some specificity as to time, place and content of each alleged communication perpetrating the fraud that each defendant conspired to violate as to each relevant subsection of (a), (b) and (c) of the RICO statute which Caro failed to do in the pleading that he developed. **(See Defendants' Exhibit 2).**

13.     The Private Security Litigation Reform Act ("PSLRA") operates as a bar to a RICO action where a person seeking to establish liability thereunder relies upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.  Caro researched this information or arguably standard thoroughly as is indicated in his time-sheets yet proceeded with the RICO action developing pleadings and litigating the action with the knowledge of said bar. In fact, Caro amassed an unconscionable 449 billable hours much of it ministerial in nature that could have been performed by a paralegal or administrative assistant.  He did this despite having held himself out as a "specialist" in federal litigation in justification of his extraordinary legal fees where the ultimate result was that the court rejected his theory and product to Hebel and Martinek's detriment.  Caro did all of this with the knowledge that he had specifically plead securities fraud pursuant to 815 Ill. Comp. Stat. 5/12.  The Court noted that Caro attempted to avoid the RICO bar simply by not stating a claim for federal securities fraud. **(Defendants' Exhibit 2).**

14.     In assessing the propriety and reasonableness of Caro's fees taking into account multiple factors, including (i) the complexity of the legal issues; (ii) the degree of success obtained; (iii) the public interest advanced by the suit whether the fees are reasonable in relation to the difficulty, stakes and outcome of the case it is apparent that Caro's claimed legal fees to do not meet the these standards.

15.     *A party may not recover fees for hours spent on unsuccessful claims*.  Where successful and unsuccessful claims involve a common core of facts and are based upon related legal theories, time spent, on losing claims may be compensable.  This is because litigants should not be penalized for pursuing multiple and alternative avenues of relief. When reducing a fee award based upon certain unsuccessful claims (or defenses), the Court should identify specific hours to be eliminated or can simply reduce the award across the board.

16.     The Court should consider whether the hours spent on the fee request bear a rational relationship to the hours spent on the merits of the case.  There are no precise mathematical formulas

for determining fees, but the Court should consider the amount claimed versus the amount awarded or recovered and whether the fees sought are congruent with those figures. Cases suggest that courts can look at how many claims in the prosecution of a case are won/lost in the same case in fashioning a fee award. Here none of Caro's theories or claims produced tangible results for Martinek and Hebel.

17.     At the time that Hebel and Martinek hired Caro to represent them he was not a high powered federal attorney as he continuously touts in this matter but rather an unemployed individual trying to make ends meet.

18.     Caro has consistently used his prolific writing skills, his mastery of the legal system; his superior knowledge of the rules of procedure, substantive law and even ethical regulations to thwart Martinek and Hebel at every turn virtually becoming an incessant pebble in their respective shoes. He was even able to obtain disqualification of counsel that Hebel and Martinek retained for this matter, Femi Soyode presumably because he was a material witness for Caro that "Caro did not make any statement that constituted waiving his right to offset rent against his balance of unpaid legal fees" and because of what Caro terms as Mr. Soyode's prior misconduct as was described in a letter, an arguably ex-parte communication to the Court in which Caro assailed Mr. Soyode's professional integrity and accused him of attempting to deceive the court concerning what appears to have been an effort to give some assistance to Martinek and Hebel in answering Caro's Complaint in the Adversarial Pleading prior to having been retained and having become of record in this matter. This is just one of the many instances of things Caro has done systematically and wilfully to gain an advantage in litigation using information he obtained from his clients while he was representing them against his clients for his own benefit in violation of his duty of loyalty and his duty to maintain their confidences and secrets.

19.     In another pleading in Martinek's bankruptcy that he is seeking to convert from a Chapter 13 to a Chapter 11, Caro makes the statement that Martinek and his wife did not disclose certain assets or claims against various individuals mostly unnamed with the exception of Mr. Soyode to whom Caro attributes a malpractice claim for the work unsuccessfully done by him. We do not know why Martinek and Hebel did not amend the complaint initiated by Caro but Mr. Caro has suggested that Mr. Soyode came into the RICO case after that claim disintegrated and did not amend the complaint to state a securities fraud cause of action or alternatively did not dismiss the federal action and pursue commercial claims against the defendants in the appropriate forum, i.e. the Circuit Court of Cook County, Illinois. But we do know based upon Judge Gottschall's opinion dismissing the RICO case with prejudice that it was Caro's work and not Soyode's that should be the subject of any malpractice claim. Again Caro has consistently used information obtained from Martinek and Hebel intentionally distorting it for the purposes of making threats of sanctions in this and other proceedings involving him and Martinek. Caro has used his superior knowledge of rules and ordinances to gain an advantage and has consistently, wilfully and contemptuously sought to cause Martinek financial harm by reporting him to the village of Riverside for purported violations of the local housing and building code causing him to have to make untimely repairs and improvements knowing that Martinek is under financial distress in no small part due to he and his wife's failure to pay market rents for over the last two and one-half years.

20.     Martinek and Hebel request to be reimbursed their attorney fees and costs in defending this suit.

II.     **DEFENDANTS' STATEMENT OF STIPULATED FACTS**
**The Undisputed facts are basic and simple which consist of the following:**

**1.**     Martinek and Caro met in a landlord tenant relationship in July, 2005.

2.     Caro divulged that he was an attorney after Martinek had a number of casual **conversations** with him and they discussed some of Martinek's legal issues.

3.     Caro saw an opportunity and offered to help Martinek with the RICO action starting with the required reasonable investigation which included Martinek's issues with the Illinois Dept. of Revenue concerning Politico, Vini's Pizza and Mas Verdes., which was a restaurant venture that Martinek had engaged in and that later Hebel invested in.

4.     Caro worked on and eventually represented Martinek in a commercial tenancy matter concerning the restaurant venture.

5.     Caro filed an action unsuccessful action in the United States District Court for the Northern District of Illinois entitled, that was dismissed with prejudice. *Martinek vs. Diaz et al.* 11-C-7190. **(Please see Defendants' Exhibit 1).**

6.     Caro is seeking damages against Martinek and Hebel claiming that he is owed fees stemming from representation of Martinek in all the above matters and as against Hebel for only the failed RICO action.

7.     Caro is seeking to use the prospective judgment for fees and a claim to an escrow with pre-paid rents from waived rents in consideration of legal services rendered for the purposes of establishing a regular income stream in an effort to have the United States Trustee and the Court to find that he and his wife's Chapter 13 Plan is feasible.

8.     Hebel and Martinek both non-attorneys never signed the fee agreements that Caro developed nor the promissory note that he entreated them to sign and have a vastly different view of the terms of their legal relationship.

9.     Hebel and Martinek in the aggregate paid Caro over $36,000.00 in attorney's fees.

10.    Caro was never licensed as an attorney in the state of Illinois. **(Please see Defendants' Exhibit 1).**

11.    Caro stated to the disciplinary board in New York that he voluntarily retired from the practice of law in June, 2010. **(Please see Defendants' Exhibit 1).**

12.    Caro was suspended effective thirty days from the order issued in the disciplinary proceeding of May 31, 2012. **(Please see Defendants' Exhibit 1)**.

13.    Caro has filed two proceedings in the Circuit Court of Cook County against Martinek and one such proceeding against Hebel.

14.    Caro has threatened sanctions in these proceedings several times.

15.     Caro and his wife have not made housing payments for over two and one-half years and received the benefit of an involuntary $41,860.00 housing subsidy from Martinek.

## III.    DEFENDANTS' STATEMENT OF MATERIAL FACTS IN DISPUTE

1 .Whether there was an agreement for legal services other than the oral agreement that Hebel and Martinek would pay Caro, respectively, Hebel $2,000 per month cash; and Martinek a rent offset which the parties set as $1,000.00 per month which is below market rent.  Additionally, this oral agreement provided for a "Success Fee" of one-third of any recovery or settlement in further consideration of Caro's legal services. This was the maximum amount that defendants agreed to pay in consideration of Caro's legal services.

2. Whether the defendants waived their respective right to object to Caro's billing statements and practices?

3. Whether Hebel and Martinek agreed to pay Caro a $500.00 or $250.00 per hour legal fee in consideration of his services and whether they objected to all his attempts to get them to pay anything other than what was agreed to in the oral representation agreement?

4. Whether Caro has an escrow fund comprised of deferred pre-paid rents in the form of legal fees as against Martinek?

5.  Whether Caro is entitled to any fee let alone any fees above the $36,000.00 that Martinek and Hebel have already paid to him?

6.  Whether Caro in disclosing information to Hebel was attempting to exercise influence over Hebel and acted with the intent to create discord between two of his then clients in an effort to put his own interests above that of his clients and disregarded the potential for a conflict in the representation of Martinek and Hebel?

7. Whether Caro should be required to disgorge fees paid if they are found to have been for services rendered as an attorney licensed to practice law in the state of Illinois when he in fact was not authorized to act in that  capacity?

8. Whether Caro when looking at the totality of circumstances has abused process in fashioning a remedy designed to allow he and his family to  live at the expense of Martinek for two and one-half years and  whether Caro has successfully  created a regular income stream for the sake of being able to fund he and his wife's Chapter 13 Plan while staying Martinek's right to pursue his remedy for forcible entry an detainer and wilfully withholding and depriving him of over 2 and one-half years rent at fair market rental value?

9. Whether Caro and his wife, Svetlana Caro had a tenancy pursuant to the lease terms of the last lease signed August, 2012 and thereafter which required them to pay rents at the amount of $1,500.00 per month at the renewal period of 8.1.13?

10. Whether Caro made material misrepresentations of fact during the course of these proceedings to obtain an unfair advantage against his former clients and to deceive this Court?

Case No.'s 13-38958 & 13-01334                                                                                                           6

**IV.   DEFENDANTS' WITNESS LIST**
1. Dennis Martinek
2. Robert L. Hebel, Jr.
3. Susan Martinek
4. Richard P. Caro
5. Svetlana Caro
6. Robert S. Harlib, Esq.
7. Aaron DeMichael, Esq,
8. Joseph F. Ravago, Esq.
9. Felix Gonzales, Esq.
10. David Newman, Esq.


**V.   DEFENDANTS' OBJECTIONS TO PLAINTIFF'S WITNESSES**
None.

**VI.   DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EXHIBIT**

1. September 13, 2010 email and attached proposed letter.  Objection.  Hearsay and Authenticity—Foundation.

2. Emails to and from Caro between September 14-29, 2010.  Objection.  Hearsay and Authenticity—Foundation.

3. Email of October 10, 2010, Power of Attorney and Agreement and Assignment.  Objection.  Hearsay and Authenticity—Foundation.

4. Statement of Services for Miscellaneous Matters. Objection.  Hearsay and Authenticity—Foundation.

5. December 1, 2011 email from Caro confirming that in *Loukas case* Caro's representation is on a deferred compensation basis.  Objection. Hearsay and Authenticity—Foundation.

6.  43 emails between June 8-18, 2011, without attachments. Objection.  Cumulative, Hearsay. Authenticity—Foundation. Cumulative and Relevance.

7. June 14, 2011 "Proposed New Agreement" for Legal Services.  Objection. Cumulative. Hearsay. Authenticity—Foundation.  Relevance.

8. June 18, 2011 email—Caro declines to do more work in the absence of an Agreement. Objection. Cumulative, Hearsay.  Authenticity—Foundation.  Relevance.

9. June 27, 2011 email Proposed Agreement for Legal Services. Objection.  Cumulative. Hearsay. Authenticity—Foundation.  Relevance.

10. June 30, 2011 Agreement adopting Hebel's Counter-proposal.  Objection. Cumulative.  Hearsay. Authenticity—Foundation.

11. September 1, 2011 Statement of Services in Diaz matter.  Objection. Hearsay. Authenticity—

Foundation.  Cumulative.

12. December 1, 2011 Statement of Services in Diaz matter.  Objection. Hearsay. Authenticity—Foundation.  Cumulative.

13. January 3, 2012 Statement of Services in the Diaz matter.  Objection. Hearsay. Authenticity—Foundation.

14. February 3, 2012 Statement of Services in Diaz matter.  Objection. Cumulative. Hearsay. Authenticity—Foundation.

15. March 5, 2012 Statement of Services in Diaz matter.  Objection. Cumulative. Hearsay. Authenticity—Foundation.

16. April, 2013 Statement of Services in Diaz matter.  Objection. Cumulative.  Hearsay. Authenticity—Foundation.

17. May 2, 2012 Statement of Services in Diaz matter.  Objection.  Cumulative. Hearsay. Authenticity—Foundation.

18. June 2, 2012 Statement of Services in Diaz matter.  Objection.  Cumulative. Hearsay. Authenticity—Foundation.

19. July 3, 2012 Statement of Services in Diaz matter.  Objection. Cumulative.  Hearsay. Authenticity—Foundation.

20. September 11, 2012 Statement of Services in Diaz matter.  Objection. Cumulative. Hearsay. Authenticity—Foundation.

21. November 30, 2012 email.  Objection.  Cumulative. Hearsay.  Authenticity—Foundation.

22.  Emails between December 4, 2011 and January 3, 2011, respecting missing $12,000.00 deposit. Objection.  Hearsay.  Authenticity—Foundation.  Relevance.

23. Email of February 1, 2012.  Objection.  Cumulative. Hearsay.  Authenticity—Foundation.  Relevance.

24.  Email of December 15, 2012.  Objection. Cumulative.  Hearsay.  Authenticity—Foundation.

25. Email of June 15, 2012. Objection.  Cumulative. Hearsay.  Authenticity—Foundation.

26. Emails of September 17, 2012.  Objection. Cumulative.  Hearsay.  Authenticity—Foundation.

27. Caro's emails responding to August 1, 2013 Lease proposal.  Objection.  Hearsay. Cumulative. Authenticity—Foundation.

28.  The Caro's Verified November 3, 2013 Complaint.  Stipulate.

Case No.'s 13-38958 & 13-01334                                                                                                              8

29. Resume of Richard Caro.  Objections.  Hearsay.  Authenticity—Foundation.

30. November, 2012 attorney fee in *Mac Runnels* case. Objection.  Relevance..

31. 4 March 2012 Settlement emails.  Objection. Alleged Settlement discussions.

32. 8 emails from 7-2 to 28, 2011.  Objection.  Cumulative. Hearsay.  Authenticity—Foundation.

33. 7 emails from 8-3 to 14, 2011.  Objection.  Cumulative. Hearsay.  Authenticity—Foundation.

34. 6 emails from 9-25 to 10-12, 2011.  Objection.  Cumulative.  Hearsay.  Authenticity—Foundation.

35. 13 emails from 9-25 to 10-12, 2011.  Objection.  Cumulative.  Hearsay. Authenticity.

36. Defendants reserve the right to object to any exhibits offered for rebuttal purposes.

VII.    **DEFENDANTS' EXHIBITS**

1. NY Supreme Court Departmental Disciplinary Action against Caro.

2. Dismissal Order of Judge Gottschall in case no.11-c-7190

3. NSF Rent Check to Martinek from Caro

4. Beginning rent payment for lease term 8.1.12-7.31.13

5. 111 Groveland Ave. Lease Martinek and Caro 8.1.11-7.31.13

6. Unexecuted Promissory note to Caro

7. Hebel's queries and statements to Caro

8. Additional monies to Caro from Martinek for dental expense and miscellaneous aide totaling $2,000.00

9. Correspondence between Martinek and Caro

10. Unexecuted agreement from Caro to Martinek and Hebel

11. Caro Statement of Services to Martinek and Hebel

12. Caro's statement of being attorney of record for Martinek and Hebel

13. Demand for rent(s) from Martinek to Caro

14. Hebel's monthly payment of $2,000.00 per month for legal services rendered according to oral

agreement.

>Respectfully submitted,
>Dennis F. Martinek and
>Robert L. Hebel, Jr.

>By: /S/ Jordan T. Hoffman
>Their attorney

Jordan T. Hoffman
ARDC# 6195896
**Jordan TraVaille Hoffman, P.C.**
11528 S. Halsted Street
Chicago, Illinois 60628
(773) 995-77900, Ext., 102
(773) 995-7921 Facsimile
Email:  jthoffmanlaw@gmail.com

.